UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM O. HUGHES,           )
    Petitioner,          )
                    )
    v.                   )      C.A. No.  09-cv-40053-MLW
                    )
CAROLYN A. SABOL,            )
    Respondent.          )

MEMORANDUM AND ORDER

WOLF, D.J.                                      June 26, 2010

On February 23, 2009, pro se petitioner William Hughes, a prisoner incarcerated at Federal Medical Center Devens ("FMC Devens"), filed a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241. Hughes claims that the Bureau of Prisons (the "BOP") has violated his rights by refusing to apply various good time credits to his sentence, thus depriving him of an opportunity for being released at the earliest possible date. He seeks an injunction ordering the BOP to re-calculate his sentence to account for these credits. On October 21, 2009, respondent Carolyn Sabol, then the Warden of FMC Devens,[1] filed a motion to dismiss Hughes' petition or, in the alternative, for summary judgment (the "Motion"). In short, she argues that the BOP has, in fact, applied to Hughes' sentence all of the good time credits to which he is entitled. Hughes did not respond to the Motion.

---

[1] Effective August 16, 2009, the Warden of FMC Devins is Jeff Grondolsky.

1

Ultimately, for the reasons stated below, the court finds Sabol's argument persuasive and, pursuant to Federal Rule of Civil Procedure 56, is allowing the motion.

I.    FACTS AND GOOD TIME CREDIT FRAMEWORK

     A.   <u>Hughes' Sentence</u>

Hughes was sentenced on July 19, 1983, in the Superior Court for the District of Columbia ("D.C."), to (1) a 20-year to life term of imprisonment for First Degree Murder/Armed Felony Murder[2] and (2) a consecutive 15-year to 50-year term for Armed Robbery.[3] Accordingly, Hughes has an aggregated minimum imprisonment of 35 years. <u>See</u> BOP Program Statement 5880.32, <u>District of Columbia Sentence Computation Manual</u>, Ch. 16 at 1 (defining "minimum term" as "the term imposed by the court . . . that establishes the period of parole eligibility").  This 35-year figure combines Hughes' 20-year *mandatory* minimum sentence for the murder, with his 15-year minimum sentence for armed robbery.

     B.   <u>Good Time Credit Framework</u>

A <u>minimum</u> term of imprisonment for a violation of the D.C. Code committed prior to June 22, 1994, like Hughes', may be reduced through application of various good time credits under D.C. law:

---

[2] At the time of Hughes' conviction, this First Degree Murder/Armed Felony Murder violation was codified at D.C. Code §22-2404, but is currently codified at D.C. Code §22-2104.

[3] At the time of Hughes' conviction, these Armed Robbery violations were codified at D.C. Code §22-901 and §22-3202, but are currently codified at §22-2801 and §22-4502, respectively.

(1) D.C. Institutional Good Time ("DCIGT"), under D.C. Code §24-428; (2) D.C. Educational Good Time ("DCEGT"), under D.C. Code §24-429 (currently codified at D.C. Code §24-221.01); and (3) D.C. Meritorious Good Time ("DCMGT"), under D.C. Code §24-429.1 (currently codified at D.C. Code §24-221.01a).

In addition, certain prisoners are also eligible to have their maximum terms of imprisonment reduced through application of Extra Good Time ("EGT") under 18 U.S.C. §4162 and related provisions.

II.  LEGAL STANDARD

    A.  Summary Judgment Versus Motion to Dismiss

The court must decide a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) considering only the complaint, or in this case the petition, and "documents the authenticity of which are not disputed by the parties[,] official records[,] documents central to plaintiffs' claim[,] or [] documents sufficiently referred to in the [petition]." Parker v. Hurley, 514 F.3d 87, 91 n.1 (1st Cir. 2007).

Here, both parties have submitted a host of evidentiary materials to their filings that do not fit within the "narrow exceptions" of documents which the court may properly consider in evaluating a motion to dismiss. See id. Accordingly, the court will not evaluate the Motion under Rule 12(b)(6). Instead, the Motion will be reviewed as one seeking summary judgment under Rule 56. Cf. Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) ("If

3

the district court relies on other material outside the [petition,] not subject to the qualifications listed above, it must convert a motion to dismiss into a motion for summary judgment.").

B.   <u>Summary Judgment</u>

Rule 56 provides, in pertinent part, that the court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In addition, the facts are to be viewed in the light most favorable to the non-moving party. <u>See</u> <u>Montalvo v. Gonzalez-Amparo</u>, 587 F.3d 43, 46 (1st Cir. 2009). "When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." <u>Smith v. Stratus Computers, Inc.</u>, 40 F.3d 11, 12 (1st Cir. 1994).

In determining the merits of a motion for summary judgment, the court is compelled to undertake two inquiries: (1) whether the factual disputes are genuine, and (2) whether any fact genuinely in dispute is material. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might

affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Id.; see also Sensing v. Outback Steakhouse of Florida, LLC, 575 F.3d 145, 152 (1st Cir. 2009).   To determine if the dispute about a material fact is "genuine," the court must decide whether "the evidence is such that a reasonable [fact finder] could return a verdict for the non-moving party." Anderson, 477 U.S. at 247-48; see also Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 15 (1st Cir. 2007).   In this analysis, the evidence relied upon must be admissible. See Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005).

III. ANALYSIS

Hughes argues that the BOP has denied him good time credits, and that this denial is the result of its incorrect characterization of his 15-year armed robbery sentence as a *mandatory* minimum, which may not be reduced by the good time credits in question.   However, Sabol and the BOP do not dispute that Hughes' armed robbery sentence is not a mandatory minimum.   In addition, the BOP has presented unrebutted evidence that, in fact, it has applied all of the good time credits to which Hughes is entitled.   Ultimately, even "scrutiniz[ing] the evidence in the light most agreeable to" Hughes, he has not "produc[ed] specific facts sufficient to deflect the swing of the summary judgment scythe." Noviello, 398 F.3d at 84 (internal quotation marks and

citation omitted).   Therefore, Sabol is entitled to summary judgment.

    A.   <u>D.C. Institutional Good Time Credit: DCIGT</u>

    As to Institutional Good Time Credit, DCIGT, the D.C. Code provides that "[e]very person who is convicted of a violation of a [D.C.] criminal law by a court in [D.C.] and whose conduct is in conformity with all applicable institutional rules is entitled to institutional good time credits in accordance with the provisions of this section." D.C. Code §24-428(a).   When, as here, an inmate's minimum term includes, and is greater than, a mandatory minimum term, then the minimum term receives DCIGT for the difference between the date the mandatory minimum term expires and the date the minimum term expires. <u>See</u> Program Statement 5880.32, Ch. 16 at 5, 16.17(b). When that is the case, DGIT will be applied at the rate applicable to the length of the overall minimum term. <u>See id.</u>

    Here, because Hughes' 35-year term includes a 20-year mandatory minimum, he is eligible to receive DCIGT on the last 15 years of his minimum term of imprisonment. <u>See</u> Program Statement 5880.32, Ch. 16 at 1-2.   Because Hughes' aggregated minimum sentence is greater than ten years, DCIGT is calculated at the rate of ten days per month. <u>See</u> Program Statement 5880.32, Ch. 16 at 2, ¶(a)(5)-(6).   Significantly, Hughes does not dispute the BOP's calculation that he is entitled to a total of 1800 days of DCIGT on his 35-year minimum term. <u>Compare</u> Petition at 13, <u>with</u> Decl. of

Forrest B. Kelly at ¶9.  Accordingly, there is no genuine issue of material fact on the applicability of DCIGT: both parties agree that Hughes is entitled to the same amount.

    B.    D.C. Education and Good Time Credit: DCEGT

    As to Education and Good Time Credit, DCEGT, the D.C. Code provides that "[e]very person whose conduct complies with institutional rules and who demonstrates a desire for self-improvement by successfully participating in an academic or vocational program, . . . shall earn educational good time credits of no less than 3 days a month and not more than 5 days a month." D.C. Code §24-221.01(a).  While this statute became effective on April 11, 1987, after Hughes was convicted and incarcerated, D.C. Code offenders who are imprisoned for D.C. criminal violations which occurred before August 5, 2000, are eligible to earn DCEGT. See Program Statement 5880.32, Ch. 12 at 3-4.

    Here, Hughes argues he is entitled to DCEGT but that the BOP has refused to provide him with any such credit. Petition at ¶29. However, the BOP agrees that Hughes is entitled to DCEGT based on his participation in various educational programs, and it has, in fact, provided him with 60 days DCEGT.  Accordingly, there is no genuine issue of material fact as to this issue: Hughes has received DCEGT.

    C.    D.C. Meritorious Good Time Credit: DCMGT

    As to Meritorious Good Time Credit, DCMGT, the D.C. Code

provides that, "[i]n the discretion of the Director of the
Department of Corrections ['DOC'], a prisoner may be allowed
meritorious good time credit for performing exceptionally
meritorious service or performing duties of outstanding importance
in connection with institutional operations." D.C. Code §22-
221.01a(a) (emphasis added).   Notably, in contrast to DGIGT and
DCEGT, DCMGT is granted not as a matter of course, but rather "may"
be provided at "the discretion" of the DOC Director. See id.

     Here, Hughes argues that he is entitled to DCMGT.   However,
while the BOP agrees that Hughes is eligible for DCMGT, the DOC
Director, in his discretion, has not deemed Hughes worthy of DCMGT.
Thus, Hughes is not entitled to any DCMGT. See Jama v. Immigration
and Customs Enforcement, 543 U.S. 335, 346 (2005) ("The word 'may'
customarily connotes discretion."); Lopez v. Davis, 531 U.S. 230,
241 (2001) (finding statute regarding reduction of sentences, 18
U.S.C. §3621(e)(2)(B), conferred discretion to BOP because it
contained the word "may" rather than "shall").   In addition, Hughes
has not provided any evidence that the Director's evaluation
regarding this issue was in any way improper.   Accordingly, there
is no genuine issue of material fact on this issue: Hughes is not
entitled to DCMGT. Bowser v. Vose, 968 F.2d 105, 109 (1st Cir.
1992) (stating, in the consideration of an inmate's claim that he
was entitled to a furlough, that "eligibility is not the same as
entitlement").

D.  <u>Extra Good Time Credit</u>

Extra Good Time Credit, EGT, is potentially available to D.C. Code offenders in DOC custody for offenses committed prior to June 22, 1994. <u>See</u> 18 U.S.C. §4162; Program Statement 5880.31, Ch. 11 at 3.  Hughes argues that he is entitled to over 500 days of EGT to be put "towards the minimum 15 year term."[4]  Sabol admits that Hughes is "potentially eligible" for over 500 days of EGT, but argues that EGT does not serve to speed the clock for his potential release. For the following reasons, Sabol is correct.

While the D.C. Code provisions described above serve to reduce an inmate's <u>minimum</u> term of imprisonment, 18 U.S.C. §4161 and its related provisions serve to reduce an inmate's <u>maximum</u> term of imprisonment. <u>See, e.g.</u>, 18 U.S.C. §§4161, 4162, 4164; <u>McCray v. United States Board of Parole</u>, 542 F.2d 558, 560 (10th Cir. 1976) ("When a prisoner, through acceptable behavior, industrial employment, and/or meritorious service, has earned sufficient time off the <u>maximum term or terms</u> for which he was sentenced, he is entitled to mandatory release, [§§] 4161, 4162, 4164.") (emphasis added).  Thus, Hughes' EGT cannot reduce Hughes' 35-year aggregate minimum term.

In addition, the EGT cannot reduce Hughes' maximum sentence

---

[4] In his petition, Hughes states that the BOP acknowledged 510 days of EGT had accrued. Petition at 13, ¶30.  In the instant motion, Sabol states that, as of October 21, 2009, the amount was up to 582 days. Motion to Dismiss or For Summary Judgment at 12.

either, because his maximum sentence is life. See, e.g., Glascoe v. United States, 358 F.3d 967, 969-70 (D.C. Cir. 2004) (rejecting application of good time credits to reduce maximum sentences of prisoners with potential life terms because "imprisonment for life supplies no fixed term from which to deduct good time credits"). While Hughes argues that EGT should be applied to reduce the term of his armed robbery conviction, "it is well established that consecutive sentences are considered to be one term," thus he cannot sever his two sentences in order to reduce the lower one's maximum term. McCray, 542 F.2d at 560 (emphasis added); Desmond v. United States Board of Parole, 397 F.2d 386, 390 (1st Cir. 1968) ("Even when a prisoner has fully served one of two consecutive terms, the good time earned on the first sentence is not vested [because he has not yet reached his total maximum sentence, minus accrued good time credit]."). Accordingly, there is no genuine issue of material fact on this issue: Hughes is not entitled to a reduction of his sentence through application of EGT. See Glascoe, 358 F.3d at 969-70.

E.   Certificate of Appealability

When a district court has rejected a petition's constitutional claims on the merits, for a Certificate of Appealability ("COA") to issue, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." See Slack v. McDaniel, 529 U.S. 473,

483 (2000).   The court must determine whether "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Id.</u> at 484 (internal quotation marks and citation omitted).   A COA will not issue if the answers to these questions are in the negative.  <u>See</u> <u>id.</u>

An issue "can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003). However, the "issuance of a COA must not be pro forma or a matter of course" because Congress has "confirmed the necessity and the requirement of differential treatment for those appeals deserving of attention from those that plainly do not." <u>Id.</u> at 337.

In this case, the court has determined that the BOP has correctly calculated Hughes' good time.   No reasonable jurist can find this conclusion to be debatable.   Therefore, a COA is not being granted.

F.   <u>Conclusion</u>

Ultimately, Sabol has demonstrated that there is no genuine issue of material fact regarding the application of good time credits to Hughes' sentence. <u>See</u> <u>Anderson</u>, 477 U.S. at 247-48.  The parties agree that Hughes is entitled to DCIGT (1800 days) and DCEGT (60 days), and the BOP has applied those credits to Hughes'

11

aggregate minimum term.  In addition, the BOP has established that there is no genuine issue of material fact that Hughes is not entitled to a reduction of his sentence through application of DCMGT or EGT, despite Hughes' conclusory allegations to the contrary.  See, e.g., Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (stating summary judgment is appropriate when "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation").  Therefore, his parole eligibility date has been correctly calculated as August 28, 2012, and his petition is without merit.[5] See Kelly Decl. ¶15.

IV.   ORDER

In view of the foregoing, it is hereby ORDERED that Sabol's Motion to Dismiss or for Summary Judgment (Docket No. 13) is ALLOWED.

/s/ Mark L. Wolf<br>UNITED STATES DISTRICT JUDGE

---

[5] This is based on a 35-year minimum term commencing on July 19, 1983, with a total reduction of 2150 days (290 days jail credit + 1800 days DCIGT + 60 days DCEGT). See Kelly Decl. ¶15; Sept. 28, 2009 Sentencing Monitoring Independent Statement, Ex. H to Kelly Decl.